NOTICE

Decision filed 07/06/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240498-U

NO. 5-24-0498

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Union County. |
| | ) | |
| v. | ) | No. 22-CF-293 |
| | ) | |
| CHADRICK DEON MILLER, | ) | Honorable |
| | ) | Timothy D. Denny, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justice McHaney concurred in the judgment.
Presiding Justice Cates specially concurred.

**ORDER**

¶ 1   *Held*:  The circuit court erred by dismissing the charges against defendant based on the State's discovery violations where no due process violation occurred and dismissal as a discovery sanction was not proportionate to the magnitude of the violations.

¶ 2   Defendant, Chadrick Deon Miller, filed a motion for discovery sanctions, alleging several discovery violations on the part of the State and requesting that the Union County circuit court dismiss multiple charges against him pursuant to Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 23, 2020) and the due process clause of both the federal and state constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. 1, § 2). The circuit court granted the motion and dismissed the charges against defendant, with prejudice. The State appeals, arguing that no due process violation occurred, no discovery violations occurred, and, even if discovery violations occurred,

1

dismissal was too harsh a sanction. For the following reasons, we reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4      On December 27, 2022, the State charged defendant by information[1] with one count of burglary (720 ILCS 5/19-1(a) (West 2020)), one count of criminal damage to property (*id.* § 21-1(a)(1) (West 2020)), one count of vehicle theft conspiracy (625 ILCS 5/4-103.1(a) (West 2020)), and two counts of felony theft (720 ILCS 5/16-1(a)(4), (a)(1) (West 2020)). The charges were based on allegations that on December 22, 2022, and December 23, 2022, defendant, while acting together and in concert with Jeffrey Pratis, unlawfully entered into Rusty's Home Center (Rusty's) in Anna, Illinois, and stole various tools, hardware, and a pickup truck.

¶ 5      On January 3, 2023, defendant filed a motion for discovery pursuant to Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001). Defendant sought, *inter alia*, any written or recorded statements made by defendant or his codefendant and any evidence the State intended to admit at trial, including any physical property and the location from which the property was acquired. Defendant also filed a request for production of police reports prepared in connection with the case.

¶ 6      On January 4, 2023, the circuit court held a preliminary hearing. Cody Collins, a police officer for the City of Anna, testified for the State. On December 23, 2022, Officer Collins responded to a call from the owner of Rusty's regarding a suspected burglary. Once there, Officer Collins observed a door with "pry marks" and a second door with a broken lock and pry marks, indicating that the doors "had been broken into." Officer Collins explained that "after watching

_____

[1]The State subsequently filed a first superseding information and a second superseding information, realleging the same charges against defendant with minor modifications.

2

video, [the door with the broken lock] was where the suspect actually made entry to the store." The owner advised that property valued at over $10,000 had been stolen, along with a pickup truck. Officer Collins directed the owner "to call his IT person, or someone who could run the cameras, so we could at least get an additional person in there to start on that and start getting a running inventory of what was actually missing."

¶ 7 Officer Collins testified that law enforcement subsequently located the stolen truck and stolen property in Alexander County. Pratis was arrested after law enforcement found some of the stolen property in his black truck, which was located near the stolen truck. Officer Collins interviewed Pratis, who indicated that defendant was involved in the burglary. Pratis advised that defendant wore olive green coveralls, a blue hoodie, and a skin-colored mask during the burglary. Pratis's description of the clothing defendant was wearing during the burglary was consistent with the clothing that Officer Collins observed the suspect wearing in the surveillance footage from Rusty's. Officer Collins also received information from a private citizen that a red vehicle matching the description of defendant's vehicle had been observed near the area where the stolen property was found. Officer Collins additionally questioned the occupants of a black car that had been observed near the area where the stolen property was found. The occupants of the black car were Trevor Glidewell, Keith Goins, and Ben Daniels. Goins advised Officer Collins that the men were in the area because Daniels had received a phone call from defendant. Officer Collins interviewed defendant on December 25, 2022.

¶ 8 On cross-examination, Officer Collins was asked if he had received any video from Rusty's, and Officer Collins responded, "Yes." Officer Collins explained that the video showed the suspect arrive at Rusty's at approximately 9 p.m. on December 22, 2022, and make entry to Rusty's at approximately 9:40 p.m. The suspect "hit the power box" and the power and cameras

3

"shut off about 10:37 p.m." Officer Collins was able to observe the suspect's clothing from the video but was unable to identify the suspect. Officer Collins confirmed that the interviews conducted with Pratis and defendant were recorded. Following Officer Collins's testimony, the circuit court found probable cause for the charges against defendant.

¶ 9 Prior to the hearing, the State provided the defense with copies of the police reports prepared by Officer Collins. In the reports, Officer Collins indicated that he reviewed the surveillance footage from Rusty's and "video footage from the park next to Rusty's Home Center." Officer Collins noted in the report that in viewing the footage from the park, "we observed a black extended cab truck heading south through the park." Officer Collins further noted that the "truck started going around a curve and started slowing down as if it was waiting for another vehicle." Approximately 20 seconds later, Officer Collins observed the truck stolen from Rusty's drive through the park. Officer Collins's reports additionally indicated that he conducted interviews with both Pratis and defendant. Multiple photographs were attached to one report, including photographs taken of the surveillance footage from Rusty's that showed the suspect facing the camera.

¶ 10 Also, on January 4, 2023, the circuit court entered a pretrial discovery order. The order required the State to provide defendant with all discovery required under Rule 412. The order further required the State to file its answer to discovery within 21 days of the entry of the order.

¶ 11 On January 23, 2023, the State made its first discovery disclosure. On April 4, 2023, the State filed a trial memorandum listing exhibits that may be used at trial. The exhibits included, *inter alia*, Officer Collins's police reports and the affidavit of probable cause. The State filed supplemental discovery disclosures in April, May, and September 2023. The case was repeatedly continued as the parties waited for DNA testing results, which were ultimately received in October

4

2023. The results indicated that defendant's DNA was found on olive green coveralls and a Gatorade bottle.

¶ 12    On October 10, 2023, defendant filed a second supplemental discovery request. Defendant indicated in the request that DNA testing had been performed on a Gatorade bottle, but it was unclear where law enforcement found the Gatorade bottle.

¶ 13    On October 11, 2023, the circuit court held a hearing. At the hearing, the State indicated that, aside from responding to defendant's supplemental discovery requests, there was no outstanding discovery to produce. In addition to raising concerns regarding the DNA evidence, defense counsel asserted that the State had never provided the recording of Pratis's December 23, 2022, interview with police. The State responded that it did not have a video of Pratis's interview. The State had asked law enforcement about a recording, but law enforcement had not produced a video.

¶ 14    At a hearing held on November 8, 2023, defense counsel indicated that the State had not yet confirmed whether a video of Pratis's interview existed. When the circuit court questioned the State about the video, the State responded, "I've done everything that I can do to confirm that. And I am viewing this as I do not have a video. There is not a video to produce." The State added that there was a question as to whether a video had ever existed and indicated that it was "waiting on responses from law enforcement." At a hearing held on December 13, 2023, defense counsel indicated that he had received the video of Pratis's interview from the State.

¶ 15    On February 27, 2024, the State filed a motion *in limine* seeking to admit the recording of Pratis's interview at trial due to the State's inability to locate Pratis to testify at trial. Defense counsel filed a response, arguing that the circuit court should deny the State's motion *in limine*. The court ultimately denied the State's motion on March 19, 2024.

¶ 16    On March 26, 2024, defendant filed a third supplemental discovery request. Defendant requested that the State provide the defense with the video of defendant's interview at the Anna Police Department on December 25, 2022. Defendant further requested that the State provide the December 22, 2022, surveillance footage from Rusty's.

¶ 17    On March 27, 2024, the State filed a motion to continue the trial set for April 1, 2024, due to the unavailability of Pratis. At a hearing held the same day, defense counsel indicated that the State had provided the video of defendant's interview "a few hours" after defense counsel filed the discovery request. Counsel indicated that he did not have the surveillance video from Rusty's or the video from the city park and that the State had indicated that it did not possess those videos. When the State responded that it had difficulty obtaining evidence from law enforcement, the circuit court stated, "the problem is you're the State, and the police are under your control as the State. So if you can't secure the evidence from those officers, then you need to let them know that you don't have a case." The court noted that there was "a videotaped-interview of a codefendant that was missing for a year that suddenly appeared." The court then stated, "This is like either extraordinarily ethically questionable gamesmanship, or extraordinarily incompetent handling of a case." Defense counsel indicated that he was ready to proceed to the trial scheduled for April 1, 2024. Defense counsel specifically stated that he was "prepared to proceed without the surveillance video from the park or Rusty's Home Center." Defense counsel went on to state, "It's referenced in the report, but we don't think that that's going to contain any exculpatory evidence." The court ruled that the matter would proceed to trial as scheduled.

¶ 18    The following day, on March 28, 2024, defendant filed a motion to continue the jury trial set for April 1, 2024. Defendant alleged that the State had not fully complied with defendant's prior discovery requests, in that the State did not provide the surveillance footage from Rusty's or

6

the video from the park near Rusty's. Defendant additionally noted that the State had provided a recording of defendant's December 25, 2022, interview on March 26, 2024, only one week before the scheduled trial date. Defendant additionally noted that the State had secured Pratis and that Pratis would testify at trial, which changed the defense's trial strategy.

¶ 19 On April 1, 2024, defendant filed a motion for discovery sanctions, requesting an evidentiary hearing. Defendant alleged in the motion that the State's "late and incomplete discovery" had prejudiced defendant's trial preparation and required an evidentiary hearing "to determine whether or not Illinois Supreme Court Rule 415(g) and the Due Process Clause of the Fourteenth Amendment have been violated to an extent that the charges must be dismissed." Defendant noted that the State had only recently disclosed the video recording of defendant's interview, and that the video contained "many objectionable statements." Defendant alleged that the State provided a portion of Rusty's surveillance footage on March 30, 2024, but that the State did not provide the defense with the entire video. Defendant further alleged that the State had not provided the defense with the video footage from a park near Rusty's. Defendant, citing *Arizona v. Youngblood*, 488 U.S. 51 (1988), alleged that if the State lost or destroyed evidence in bad faith, the circuit court should dismiss the charges against defendant. Defendant further asserted that even "[i]f the evidence was lost or destroyed negligently," dismissal of the charges may be appropriate as a discovery sanction. Defendant alleged that, at minimum, his trial should be continued to allow defense counsel additional time to review the materials recently provided by the State. The court ultimately continued the trial and set the matter for hearing on defendant's motion.

¶ 20 On April 4, 2024, the date of the hearing on defendant's motion for sanctions, the State filed a response to the motion. The State alleged that "[a]t the time of the filing of this pleading the State is not aware of any additional evidence that is outstanding and not disclosed in

7

discovery." The State alleged that it had "made diligent efforts to obtain all available evidence since the filing of the charges herein by sending multiple written requests to the investigating agencies to provide all available evidence and supplement evidence provided." The State alleged that certain evidence was unavailable and that the production of other evidence had been delayed due to the State's belief that such evidence was unavailable. The State further alleged that it had not engaged in any intentional delays in discovery or otherwise acted in bad faith in providing discovery to the defense.

¶ 21 Later that day, the circuit court held a hearing on defendant's motion. At the hearing, Officer Collins, formerly with the Anna Police Department, testified consistently with his testimony from the probable cause hearing. Officer Collins viewed a surveillance video from Rusty's, but Officer Collins did not "personally collect the video." Officer Collins explained that an employee from Rusty's showed him the video. When asked if someone else collected the video, Officer Collins responded, "That, I'm not sure. I would imagine that it was collected at some point." While viewing "the most relevant" parts of the video, Officer Collins used his phone to take "a few [still] pictures of the suspect that was in the business." Officer Collins attached the pictures to his report. Officer Collins confirmed that the surveillance video showed a suspect in the store. Officer Collins believed the video was collected at a later date and explained that Anna Police Chief Bryan Watkins "would have taken care of any evidence handling."

¶ 22 Officer Collins also viewed a surveillance video from the park across the street from Rusty's. Officer Collins observed in the video a black pickup truck, which was later identified as Pratis's truck, driving in the area near Rusty's. Officer Collins also observed the truck that was stolen from Rusty's driving through the same area. Officer Collins was unable to identify the drivers of the vehicles from the video. Officer Collins watched the video in Chief Watkins's office.

Officer Collins believed the video was "most likely just on the hard drive of something" that he did not have access to. Officer Collins had no knowledge of how to access the video. Officer Collins did not know if anyone else attempted to preserve the video.

¶ 23    Officer Collins interviewed Pratis following Pratis's arrest on December 23, 2022. The interview was recorded and was conducted at the Union County Sheriff's Office. During the interview, Pratis advised Officer Collins that defendant had been involved in the burglary at Rusty's. Officer Collins personally did not take any steps to preserve or collect the recording of the interview with Pratis during the course of the investigation. Officer Collins did not know why it would have taken 326 days for defendant to receive a copy of that video recording. Officer Collins noted that defendant's DNA was found on the coveralls Pratis claimed defendant wore during the burglary, which were found in Pratis's truck.

¶ 24    Officer Collins interviewed defendant at the Anna Police Department on December 25, 2022. The interview was recorded. Officer Collins did not know how to access the recording of the interview. Officer Collins noted that defendant had a similar body type to the individual who was seen in the surveillance footage from Rusty's. Officer Collins did not know why it would have taken 458 days for defendant to receive a copy of that video.

¶ 25    Officer Collins knew that a Gatorade bottle had been swabbed for DNA, but he did not know if a Gatorade bottle had been collected from Rusty's. Officer Collins did not know the specific location where the Gatorade bottle was discovered inside of Rusty's. Officer Collins believed another officer was responsible for photographing and collecting the Gatorade bottle.

¶ 26    Officer Collins testified that he was never advised, trained, or informed on any protocols to process, collect, or preserve video recordings of interviews. Officer Collins stated, "That was all taken care of through Chief Watkins." Officer Collins believed only Chief Watkins had the

credentials to access the recordings of the interviews. Officer Collins was unaware of any evidence having been destroyed or intentionally withheld from the State or the defense in defendant's case.

¶ 27    When the circuit court inquired whether defense counsel had received the entire surveillance video from Rusty's, defense counsel responded, "I don't believe so, Judge. I have a few clips." The court noted that the State filed a response to defendant's motion for sanctions the morning of the hearing. The court noted that the State alleged in the response that it was unaware of any additional evidence that was outstanding and not disclosed at the time it filed the response, but that defense counsel did not have the complete surveillance video from Rusty's or the video from the city park. The State responded that it did not have the complete video from Rusty's or the video from the park.

¶ 28    Chief Watkins next testified regarding his involvement with the case. Chief Watkins viewed the surveillance videos from Rusty's on a flash drive in his office on March 26, 2024, which was the date that an employee from Rusty's emailed him the videos. Chief Watkins explained that the surveillance footage was emailed to him in a series of five different videos, or clips, that were each approximately one minute long. When asked if anyone attempted to preserve the entire surveillance video, Chief Watkins responded, "I did not. I cannot answer that." Chief Watkins did not know if any officers requested the entire surveillance video. Chief Watkins downloaded the video clips "into Dropbox, which is what we use to forward our video data to the State's Attorney's office." Chief Watkins claimed that the video clips from Rusty's were provided to the State on March 26, 2024. In explaining the delay in obtaining the surveillance footage, Chief Watkins stated that he was under the impression law enforcement already had the video. To Chief Watkins's knowledge, the five one-minute clips were all that remained of the surveillance footage from Rusty's.

¶ 29 When asked if he reviewed the video from the city park across from Rusty's, Chief Watkins responded, "We don't—one, we don't have any cameras right across the street from Rusty's Home Center that the city owns and operates; two, I did not fe—review any of the video that you're asking of any park video." Chief Watkins confirmed that he did not view a video showing a black truck and the stolen truck driving near Rusty's on December 22, 2022, but he acknowledged that Officer Collins's report indicated that Officer Collins viewed such video. When asked if he knew whether anyone made any effort to preserve the park video, Chief Watkins responded, "I do not. I do not have that evidence." When asked whose job it was to preserve the video, Chief Watkins responded, "That would be the officer's job. And it would be my job to supervis[e] that it got done, and I failed to do that." Chief Watkins explained that the video from the park had been recorded over and no longer existed.

¶ 30 Chief Watkins acknowledged that he received several requests from the State to produce evidence relating to defendant's case. Chief Watkins explained that "[t]here were requests for the video at Rusty's Home Center of the suspect inside the building and around the property. There [were] requests for interview videos. There were *** requests about this case that didn't get taken care of in a timely manner." Chief Watkins was unaware of any available, outstanding evidence relating to defendant's case that had not been turned over to the State at the time of the hearing. Chief Watkins did not believe any additional evidence could be obtained relating to defendant's case. Chief Watkins was unaware of any evidence relating to defendant's case being intentionally destroyed, modified, or withheld. Chief Watkins claimed "there was no evidence that would have ever been intentionally not given to [the State] for any reason." In addressing the delays in providing evidence to the State, Chief Watkins stated, "So I don't have a good explanation for it, other than the fact that we're busy."

11

¶ 31    Chief Watkins acknowledged that a Gatorade bottle was found in a shopping cart at Rusty's. Chief Watkins explained that the Gatorade bottle was swabbed and sent for DNA testing but that the Gatorade bottle itself was not collected as evidence. Chief Watkins confirmed that the DNA found on the Gatorade bottle belonged to defendant.

¶ 32    After considering the arguments of the parties, the circuit court indicated that it had been unable to find caselaw addressing a situation where "this many violations occurred." The court acknowledged that courts "favor sanctions of excluding evidence short of dismissal if there is a violation of the rules regarding discovery." The court noted that "[t]he sanction would be none of the videos come in." The court went on to state that if the videos were "out, all of the information the officers referred to, they're not going to be able to testify about what was on those videos or how they took the next step in their investigation because the videos weren't going to be used." The court noted that the testimony presented at the hearing "raised more questions with further incomplete, lacking investigation, some of which is on the precipice between malfeasance and misconduct." The court could not "see any way that you can exclude the evidence in this case and then proceed to trial" and "be proven beyond a reasonable doubt." Referencing the multitude of issues with discovery, the court concluded, "based on the Supreme Court Rule and the law, I am going to find as a sanction this case is going to be dismissed. I also, frankly, don't believe there is a way to have a fair trial and prove this case beyond a reasonable doubt." A docket entry from the date of the hearing provides, in pertinent part, as follows:

> "Based upon the pleadings, testimony, and argument of counsel, the court finds that there have been multiple discovery violations including the failure to disclose basic video evidence required to be disclosed under Supreme Court Rule 412. This includes video interview[s] of the defendant and co-defendant taken days after the alleged incident. Based

12

upon testimony and representations of Counsel the park video used in the early stages of the investigation was never secured and is no longer available. Video of [t]he incident from the victim was not secured and returned until the last 7-10 days, more than 450 days after the incident in question despite being referenced to in pleadings by couns[e]l for the State.

Testimony produced in court further calls into question the chain of custody of video that was not secured as well as questions regarding other evidence. [D]ue to the multiple discovery issues, the court does not believe the case can be tried without violation of the Illinois Supreme Court rules, the constitution[s] of the United States and the State of Illinois."

Accordingly, the court dismissed the case with prejudice. The State filed a timely appeal.

¶ 33                                    II. ANALYSIS

¶ 34    On appeal, the State argues that this court should reverse the circuit court's dismissal of the case and remand the matter for further proceedings. In support, the State first argues that dismissal was unwarranted on due process grounds. The State next argues that no discovery violation occurred and, even assuming a discovery violation occurred, dismissal was unwarranted as a sanction under Rule 415(g)(i).

¶ 35    Defendant initially maintains that the circuit court dismissed the case pursuant to Rule 415(g)(i), not on due process grounds. We note that courts may analyze discovery violations under either the due process clauses of the federal and state constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. 1, § 2) or Rule 415(g)(i). *People v. Moore*, 2016 IL App (1st) 133814, ¶ 23; *People v. Stolberg*, 2014 IL App (2d) 130963, ¶ 25 (noting that a discovery violation may be analyzed as either a due process violation or under Rule 415). In the present case, defendant argued in the motion for sanctions that dismissal was proper under either the due process clause or Rule

13

415. The court clearly indicated that it was dismissing the case due to violations of "the Illinois Supreme Court rules, [and] the constitutions of the United States and the State of Illinois." Thus, we conclude that the court dismissed the case pursuant to both the due process clause and Rule 415. Accordingly, we first consider whether a due process violation occurred.

¶ 36    The State argues that dismissal was unwarranted on due process grounds where there was no bad faith on the part of the State or law enforcement. Defendant argues that dismissal on due process grounds was warranted where the loss or destruction of evidence resulted from bad faith. We agree with the State.

¶ 37    "The destruction or loss of evidence by the State violates due process only under certain circumstances." *People v. Sandridge*, 2020 IL App (1st) 173158, ¶ 22. The United States Supreme Court explicitly held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In so holding, the United States Supreme Court reasoned that, unlike a case where the State fails to disclose material exculpatory evidence, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. at 57. The Supreme Court explained the reasoning for this difference in treatment by observing that " '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.' " *Id.* at 57-58 (quoting *California v. Trombetta*, 467 U.S. 479, 486 (1984)). The Supreme Court further indicated that it was unwilling "to read the 'fundamental fairness' requirement of the Due Process Clause [citation] as imposing on the police an undifferentiated and absolute duty to retain and to preserve all

14

material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58.

¶ 38    Our supreme court has stated as follows:

"In order to promote the preservation of exculpatory evidence, there must be the possibility of a sanction where evidence is lost or destroyed. On the other hand, a defendant should not be rewarded for the inadvertent loss of a piece of evidence where other evidence sufficient to support his conviction remains. The proper balance between these competing interest[s] can be accomplished through careful consideration of (1) the degree of negligence or bad faith by the State in losing the evidence, and (2) the importance of the lost evidence relative to the evidence presented against the defendant at trial." *People v. Hobley*, 159 Ill. 2d 272, 307 (1994).

In *People v. Newberry*, 166 Ill. 2d 310 (1995), our supreme court considered whether the defendant, who was charged with unlawful possession of a controlled substance, was entitled to have the charges dismissed on due process grounds where the State destroyed the substance in question after the defendant made a specific discovery request. In considering this question, our supreme court adopted an "outcome-determinative test," reasoning as follows:

"In *Youngblood*, the disputed material was not essential for establishing the defendant's guilt or innocence. Its value was speculative, and it played no role in the prosecution's case. *** The situation in this case is markedly different. Here, the evidence in question is more than just 'potentially useful.' It is essential to and determinative of the outcome of the case. [The defendant] cannot be convicted of the drug possession charges absent proof of the content of the disputed substance, nor does he have any realistic hope

15

of exonerating himself absent the opportunity to have it examined by his own experts."

*Newberry*, 166 Ill. 2d at 315.

Our supreme court has since recognized that "the outcome-determinative test" adopted in *Newberry* was called into question by the United States Supreme Court's decision in *Illinois v. Fisher*, 540 U.S. 544 (2004). *People v. Sutherland*, 223 Ill. 2d 187, 240 (2006). Our supreme court specifically noted that in *Fisher*, the United States Supreme Court expressly disagreed with the outcome-determinative analysis set forth in *Newberry*, concluding that the application of the bad-faith requirement in *Youngblood* does not depend on " 'the centrality of the contested evidence to the prosecution's case or the defendant's defense.' " *Sutherland*, 223 Ill. 2d at 239 (quoting *Fisher*, 540 U.S. at 549). Our supreme court further noted that in *Fisher*, the United States Supreme Court "reiterated its holding in *Youngblood* that the bad-faith requirement applies where the evidence destroyed is only 'potentially useful' evidence and not 'material exculpatory' evidence." *Id.* at 240 (quoting *Fisher*, 540 U.S. at 549). Our supreme court has, thus, recognized that a showing of bad faith in connection with the loss or destruction of potentially useful evidence is required to establish both a state and federal due process violation. *Sutherland*, 223 Ill. 2d at 241 (citing *Fisher*, 540 U.S. at 549). "Whether a defendant was denied due process, and whether that denial was sufficiently prejudicial to require the dismissal of the charges, are questions of law, which are reviewed *de novo*." *People v. Stapinski*, 2015 IL 118278, ¶ 35.

¶ 39    In the present case, the evidence at issue was only potentially useful evidence, not material exculpatory evidence, as defined by the United States Supreme Court in *Youngblood* and *Fisher*. At the hearing on the State's motion to continue, defense counsel indicated that he was "prepared to proceed without the surveillance video from the park or Rusty's Home Center." Defense counsel went on to state, "It's referenced in the report, but we don't think that that's going to contain any

16

exculpatory evidence." Defense counsel also did not argue, and it does not appear that the Gatorade bottle was material exculpatory evidence. See *Fisher*, 540 U.S. at 549 (noting the evidence was only potentially useful where "an additional test [on the destroyed controlled substance] *might have* provided the defendant with an opportunity to show that the police tests were mistaken") (emphasis added); *Youngblood*, 488 U.S. at 54 (noting that the evidence was only potentially useful despite the court of appeal's determination that the destroyed semen sample "could [have] eliminate[d] the defendant as the perpetrator"). Moreover, defendant on appeal does not argue that the evidence at issue was material exculpatory evidence and acknowledges that the evidence at issue was only potentially useful. Thus, we conclude that the surveillance footage and Gatorade bottle at issue were, at most, potentially useful to the defense. Accordingly, defendant must demonstrate that the loss or destruction of the evidence was due to bad faith on the part of the State or law enforcement in order to establish a due process violation.

¶ 40 After carefully reviewing the record, we conclude that defendant has not demonstrated bad faith on the part of the State or law enforcement. While the record reveals that the complete video from Rusty's, the video from the park, and the Gatorade bottle were not preserved for review, there is nothing in the record that indicates bad faith on the part of the State or law enforcement. The State repeatedly indicated at hearings before the circuit court that it had difficulty obtaining the evidence from law enforcement despite making multiple requests. Testimony from law enforcement indicated that no evidence was lost or destroyed in bad faith. Instead, it appears that law enforcement acted negligently in collecting evidence in the present case. That is, Officer Collins believed that Chief Watkins was responsible for collecting the video evidence, while Chief Watkins believed that Officer Collins was responsible for doing so. The misunderstanding between Officer Collins and Chief Watkins led to the loss or destruction of the complete video from Rusty's

17

and the video from the park. There is similarly no evidence indicating that law enforcement lost or destroyed the Gatorade bottle in bad faith. Officer Collins, again, believed another officer was responsible for photographing and collecting the Gatorade bottle. Although there was a delay in the production of the video recorded interviews, the defense was eventually provided with the videos after defense counsel advised the State the videos had not been produced. The State repeatedly stated at hearings before the court that it had difficulty obtaining the videos of the interviews from law enforcement. Chief Watkins testified that no evidence was intentionally withheld from the State. Chief Watkins attributed the delays to the fact that his department was "busy." Consequently, defendant failed to demonstrate bad faith on the part of the State or law enforcement and, thus, the failure to preserve the evidence at issue did not constitute a denial of due process under either the federal or state constitutions.

¶ 41   We next consider whether dismissal was appropriate under Rule 415(g)(i). The State argues that no discovery violations occurred and, even if there were discovery violations, dismissal was too harsh a sanction under Rule 415(g)(i). Defendant argues that several discovery violations occurred and that the circuit court acted within its discretion to dismiss the case. We agree with defendant that discovery violations occurred; however, we agree with the State that dismissal was too harsh a sanction under Rule 415(g)(i).

¶ 42   Rule 415(g)(i) provides as follows:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or

18

enter such other order as it deems just under the circumstances." Ill. S. Ct. R. 415(g)(i) (eff. Oct. 23, 2020).

¶ 43    Our supreme court has held that Rule 415(g)(i) may be utilized by courts "independent of any due process considerations" to impose sanctions for the State's discovery violations, including the sanction of dismissing charges against a defendant. *Newberry*, 166 Ill. 2d at 317-18. When reviewing a trial court's dismissal under Rule 415, the reviewing court considers *de novo* whether a discovery violation occurred. *People v. Ramsey*, 239 Ill. 2d 342, 424, 429 (2010).

¶ 44    Illinois Supreme Court Rule 412 governs disclosure to the accused, and subsection (f) of that Rule provides that "[t]he State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged." Ill. S. Ct. R. 412(f) (eff. Mar. 1, 2001); *People v. Koutsakis*, 255 Ill. App. 3d 306, 310 (1993). Subsection (g) of that Rule provides that "[u]pon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the State, and which is in the possession or control of other governmental personnel, the State shall use diligent good-faith efforts to cause such material to be made available to defense counsel." Ill. S. Ct. R. 412(g) (eff. Mar. 1, 2001). When a defendant makes a specific request for an item of evidence pursuant to Rule 412, the State is put on notice that the item must be preserved. *People v. Calloway*, 2019 IL App (1st) 160983, ¶ 67. "A discovery rule violation by the State may occur whether or not the State's neglect was inadvertent or purposeful." *People v. Leon*, 306 Ill. App. 3d 707, 713 (1999).

¶ 45    In the present case, the circuit court indicated that multiple discovery violations occurred. The court discussed the following violations at the hearing on the motion for sanctions: the delayed production of the recorded interviews of defendant and Pratis; the incomplete production of the

19

surveillance video from Rusty's; the loss or destruction of the video from the city park; and the loss or destruction of the Gatorade bottle. We discuss each of these violations in turn.

¶ 46    Regarding the videos of defendant's and Pratis's interviews, we note that the defense filed a motion for discovery on January 3, 2023, requesting that the State tender any written or recorded statements made by defendant or his codefendant. The following day, on January 4, 2023, the court ordered the State to comply with defendant's discovery request within 21 days. It is undisputed that the State did not produce the videos within 21 days and, thus, violated the court's order. However, the State eventually produced the videos following additional requests by the defense. Defense counsel advised the State that he had not received the video of Pratis's interview at a hearing held on October 11, 2023, and the State produced the video prior to a hearing held on December 13, 2023. The defense filed a motion on March 26, 2024, specifically requesting the video of defendant's recorded interview, and the State produced the video the same day. Although the State eventually produced the video recordings of the interviews, we conclude that the delay in production constituted a discovery violation.

¶ 47    Regarding the surveillance footage from Rusty's, the State asserts that the defense made its first specific request for this evidence on March 26, 2024. The State notes that shortly thereafter, on March 30, 2024, the defense received five one-minute video clips from Rusty's December 22, 2022, surveillance footage. Chief Watkins testified that he received the video clips from Rusty's on March 26, 2024, and that he immediately forwarded those clips to the State. Chief Watkins testified that the entirety of the surveillance footage had not been preserved and that the five one-minute clips were all that remained of the footage. Regarding the video from the park, the State notes that the first specific request the defense made for this video was an oral request at a hearing held on March 27, 2024. Chief Watkins testified that the video from the park had since been

20

recorded over and was no longer available. While we acknowledge that the defense did not specifically request production of these videos in the initial discovery motion, the motion generally requested all evidence the State intended to use at trial. The defense was not required to make any additional specific requests for this evidence. Moreover, we note that the videos were referenced in Officer Collins's police report. Officer Collins specifically testified regarding the surveillance footage from Rusty's at the probable cause hearing. We agree with defendant that the State violated the discovery rules by failing to obtain and preserve the videos under these circumstances. See *People v. Johnson*, 2023 IL App (5th) 210416-U, ¶¶ 18-19 (concluding that the State had a duty to ensure that a store surveillance video showing the crime, which the State relied on as supporting evidence of probable cause, was placed within its possession or control and that the State's failure to do so constituted a violation of Rule 412).

¶ 48    Regarding the Gatorade bottle, the State notes that the defense did not specifically request this evidence in a motion for discovery and did not reference the bottle in the motion for sanctions. However, in the defense's initial motion for discovery, the defense generally requested any evidence the State intended to admit at trial, including any physical property and the location from which the property was acquired. While the defense did not mention this evidence in the motion for sanctions, the Gatorade bottle was discussed at the hearing on the motion for sanctions, and it was undisputed that the bottle had not been preserved. We conclude that the State also violated the discovery rules by failing to obtain and preserve the Gatorade bottle, where it intended to present evidence at trial demonstrating that defendant's DNA was found on the bottle located inside of Rusty's.

¶ 49 Accordingly, the circuit court did not err when it found that the State committed discovery violations in the present case. Thus, we consider whether the court abused its discretion by dismissing the case based on these discovery violations.

¶ 50 "If the State fails to comply with its discovery obligations under Rule 412, the trial court may impose any sanctions it deems 'just under the circumstances' to eliminate any unfair prejudice to the defendant." *Calloway*, 2019 IL App (1st) 160983, ¶ 68 (quoting Ill. S. Ct. R. 415(g)(i) (eff. Oct. 1, 1971)). The circuit court has broad power to impose sanctions under Rule 415(g)(i) and "no showing of bad faith by the State is required in order for the trial court to act." *Newberry*, 166 Ill. 2d at 317-18; *Moore*, 2016 IL App (1st) 133814, ¶ 35 ("A defendant does not need to make a showing of bad faith for the court to dismiss the indictment as a sanction.").

¶ 51 However, "the object and purpose of sanctions for noncompliance with discovery rules or orders should be to compel discovery rather than to punish." *People v. Jackson*, 48 Ill. App. 3d 769, 771 (1977). The discovery rules are in place to prevent surprise or unfair advantage and to aid in the search for the truth. *People v. Tally*, 2014 IL App (5th) 120349, ¶ 27. "Dismissal of the charges as a discovery sanction is not required in every situation in which evidence is destroyed," and "[t]he sanction must be proportionate to the magnitude of the violation." *People v. Fernandez*, 344 Ill. App. 3d 152, 161-62 (2003). When determining an appropriate sanction, a court should consider the effectiveness of a less severe sanction, the materiality of the evidence, the prejudice resulting from the violation, and whether there was bad faith. *People v. Forrest*, 2015 IL App (4th) 130621, ¶ 41.

¶ 52 The proper sanction to employ under Rule 415(g)(i) "is a decision appropriately left to the discretion of the trial court, and its judgment is entitled to great weight." *Newberry*, 166 Ill. 2d at 318. Accordingly, we review a circuit court's decision on sanctions for discovery violations for an

abuse of discretion, which "exists only where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." *Ramsey*, 239 Ill. 2d at 429.

¶ 53 After carefully reviewing the record, we conclude that the circuit court abused its discretion by dismissing the charges against defendant in this case. While we do not condone the negligent handling of the evidence in this case and we understand the court's frustrations, an outright dismissal was too harsh a sanction under the present facts and circumstances. See *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998) (because dismissal is such a drastic sanction, it should be employed as a last resort).

¶ 54 As noted, there was no evidence demonstrating bad faith on the part of the State or law enforcement in the negligent handling of the evidence in this case. The surveillance videos from Rusty's and the park were not essential to the State's case and would have served only to corroborate Pratis's testimony. The defense also acknowledged that these videos would likely not have contained any exculpatory evidence. The State made attempts to obtain both videos from law enforcement and provided the defense with the portions of the video from Rusty's shortly after the defense specifically requested the video. The videos of the recorded interviews of defendant and Pratis were not lost or destroyed and were provided to the defense shortly after defense counsel specifically requested them. It also appears that the Gatorade bottle itself was not essential to the State's case and would have merely served to corroborate other evidence.

¶ 55 In our view, the circuit court could have considered more moderate sanctions that would have furthered the truth-seeking process under these circumstances. The court apparently considered the exclusion of evidence when it acknowledged that courts "favor sanctions of excluding evidence short of dismissal if there is a violation of the rules regarding discovery." The

23

court stated that "[t]he sanction would be none of the videos come in." The court went on to state that it could not "see any way that you can exclude the evidence in this case and then proceed to trial" and "be proven beyond a reasonable doubt." We note, however, that the State planned to call Pratis to testify at trial. Pratis identified defendant as the individual who unlawfully entered Rusty's and stole the property and truck. While the State contends that the court's statements indicate that it would exclude Pratis's testimony, there is no specific ruling in the record that supports this contention. To the extent the court concluded that the State could not prove its case without the video evidence and testimony regarding the video evidence, the court was incorrect. The jury could find Pratis credible and convict defendant based upon his testimony alone. See *People v. Smith*, 185 Ill. 2d 532, 541 (1999) ("The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict.").

¶ 56    In light of the foregoing, we hold that the circuit court abused its discretion by dismissing the charges and we remand the matter back to the circuit court to determine an appropriate sanction for the violations that occurred in this case.[2] See *People v. Koutsakis*, 255 Ill. App. 3d 306, 314 (1993) (the circuit court's sanction of precluding police officers from testifying concerning matters that may have been included on a tape that was destroyed was limited and proportionate to the State's discovery violation); see also *People v. Forsythe*, 84 Ill. App. 3d 643, 646 (1980) (holding that it was an abuse of discretion for the circuit court to dismiss the indictment, where the court could have considered other sanctions, such as ordering a continuance so the defense could interview an informant); see also *In re Julio C.*, 386 Ill. App. 3d 46, 53-54 (2008) (concluding that the circuit court abused its discretion by dismissing the charges based on the State's discovery

---

[2]This decision is limited to the issue of discovery violations and does not address issues relating to the admissibility of any evidence at trial.

violation and noting that "the trial court could give a limiting instruction based on Illinois Pattern Jury Instructions, Civil, No. 5.01 (2008 ed.) (2006), which states generally that the failure of a party to produce evidence within its control creates a presumption that the evidence if produced would have been adverse to that party."). We direct the court on remand to carefully consider each violation and impose sanctions that are "proportionate to the magnitude of the violation[s]." *Fernandez*, 344 Ill. App. 3d at 161-62.

¶ 57   We acknowledge the State's argument that it "appears" the circuit court excluded certain evidence when it issued its ruling dismissing the charges. The State even "concedes that barring some of the evidence at issue was not inappropriate." Although the court referenced the exclusion of evidence, the court ultimately dismissed the case without specifically excluding any evidence. The State's speculation regarding the exclusion of evidence essentially invites this court to provide an advisory opinion on the issue of whether the exclusion of evidence would be an appropriate sanction in the present case. We decline the State's invitation to do so. We reiterate that "[t]he trial court is in the best position to determine an appropriate sanction based upon the effect the discovery violation will have upon the defendant." *Koutsakis*, 255 Ill. App. 3d at 314. We are confident that on remand the court will follow this court's direction and impose appropriate sanctions for the discovery violations that occurred.

¶ 58                                III. CONCLUSION

¶ 59   For the foregoing reasons, we reverse the judgment of the circuit court of Union County dismissing the charges against defendant and remand for the court to consider the appropriate sanctions, if any, that should be proportionate to the magnitude of the discovery violations.

¶ 60   Reversed and remanded with directions.

25

¶ 61    PRESIDING JUSTICE CATES, specially concurring:

¶ 62    I agree with my colleagues' decision to vacate the order of dismissal as a sanction for the State's discovery violations and to remand the case to the circuit court for reconsideration of the appropriate sanctions. I write separately because I do not agree that it is necessary to reach the due process issue to decide this appeal. A review of the circuit court's oral pronouncements during the hearing on the defendant's motion for sanctions and the corresponding docket entry order show that the circuit court stopped short of finding that the State acted in bad faith and that it did not dismiss the case as a sanction based upon due process grounds. Instead, the circuit court sanctioned the State for failing to comply with Supreme Court Rule 412 (eff. Mar. 1, 2001). Thus, the majority's extensive due-process discussion, including an analysis of whether each of the non-preserved items of evidence constituted "potentially useful evidence" or "material exculpatory evidence," is not dispositive and distracts from the resolution of the main issue—whether the circuit court abused its discretion in dismissing this case as a sanction for the State's discovery violations. In addition, I find that the majority's order does not adequately identify the State's considerable discovery violations.

¶ 63    Supreme Court Rule 412 (eff. Mar. 1, 2001) governs the State's obligations to disclose materials and information to the defense. Subsection (a) of Rule 412 provides that the State "shall," upon written motion of defense counsel, disclose to defense counsel material and information within its possession or control. Ill. S. Ct. R. 412(a) (eff. Mar. 1, 2001). The material and information that are required to be disclosed include "any written or recorded statements and the substance of any oral statements" made by the accused or a co-defendant; any reports or statements of experts, including results of scientific tests, experiments, or comparisons; and any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use

26

in the hearing or trial. Ill. S. Ct. R. 412(a)(ii), (iv), (v) (eff. Mar. 1, 2001). Rule 412 also requires the State to disclose "any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce his punishment therefor." Ill. S. Ct. R. 412(c) (eff. Mar. 1, 2001). The rule provides that the State's obligations are to be performed "as soon as practicable" after the defendant files its motion for discovery. Ill. S. Ct. R. 412(d) (eff. Mar. 1, 2001). Additionally, the rule provides that the State "should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged." Ill. S. Ct. R. 412(f) (eff. Mar. 1, 2001).

¶ 64     Supreme Court Rule 415 (eff. Oct. 23, 2020) governs the regulation of discovery. Rule 415 imposes a continuing duty to disclose on the part of the State and the defense alike. Ill. S. Ct. R. 415(b) (eff. Oct. 23, 2020). The rule also authorizes the circuit court, in its discretion, to impose sanctions when a party fails to comply with an applicable discovery rule or an order issued pursuant thereto. Ill. S. Ct. R. 415(g) (eff. Oct. 23, 2020).

¶ 65     In this case, defense counsel filed a written motion for discovery on January 3, 2023. This was shortly after the defendant was arrested and charged in this case. In the motion, counsel sought disclosure and production of "any written or recorded statement or statements and the substance of any oral statements" made by the defendant or by a co-defendant. Defense counsel's written request for these statements was made in accordance with Rule 412(a)(ii). The circuit court entered an order January 4, 2023, directing the State to comply with the defendant's request within 21 days. According to the record, the State did not produce the recorded interview of the defendant until March 26, 2024, more than a year after the initial discovery motion was filed. And, the State

27

did not produce the recorded statement of a co-defendant, Jeffrey Pratis, until 326 days after the filing of the written motion. Defense counsel was not required to file supplement motions with "specific" requests for these materials. Rule 412 mandated that the State preserve and produce these materials to defense counsel "as soon as practicable" after defense counsel filed his written motion requesting discovery, and the State failed to do so.

¶ 66    In its brief, the State attempts to deflect responsibility for its untimely disclosure of the requested statements. The State asserts that the defense was "aware" of the "substance" of the defendant's statement and Pratis's statement "early on," as the statements were extensively detailed in Officer Collins's investigative reports and in his testimony at the preliminary hearing, and therefore, the untimely disclosures did not prejudice the defense. This argument is without merit. The State knew that Officer Collins conducted a recorded interview of codefendant Pratis on December 23, 2022, and a recorded interview of the defendant on December 25, 2022. The State had an obligation to obtain the recorded interviews from investigators and to produce the requested discovery "as soon as practicable" following the filing of the defendant's discovery motion. See Ill. S. Ct. R. 412(a), (d), (f) (eff. Mar. 1, 2001). The fact that the State "eventually" produced these materials does not excuse or minimize its failure to comply with the defendant's discovery requests and the circuit court's order to produce that material. At this point, I would admonish the State that the supreme court rules are not aspirational or mere suggestions; they have the force of law and there is a presumption they will be obeyed and enforced as written. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). In my view, the significant delay in production of the statements requested by defense counsel was a substantial violation of Rule 412.

¶ 67     These were not the State's only discovery violations. In the initial written motion for discovery, defense counsel also requested any photographs or tangible objects that the prosecution intended to use "in the hearing or trial," the names and addresses of any witnesses the State intended to call at trial to identify the defendant as the perpetrator of the crime, and any reports of scientific testing. The defense also requested that any physical property the State intended to use at trial be made available for inspection. Despite these requests, the State failed to coordinate with investigators to secure and preserve the surveillance video footage of a suspect inside Rusty's Home Center (Rusty's), and a surveillance video of the park across from Rusty's, recorded by a city park camera, that purportedly showed Pratis's truck and a truck reported stolen from Rusty's in the area at the time of the burglary. The State also failed to preserve a Gatorade bottle found inside that store that purportedly contained the defendant's DNA. The failure to preserve this evidence cannot be considered a mere oversite because these items were identified by Officer Collins and relied upon to establish probable cause for the defendant's arrest.

¶ 68     In fact, during the preliminary hearing, Officer Collins testified that when he learned that Rusty's had security cameras, he notified the owner of Rusty's to call his "IT person" or someone who could show him the video. Collins recalled that he viewed Rusty's video, which showed a suspect inside the store. Collins was able to see the suspect's clothing and boots, but the video was not clear enough to identify the suspect. Collins used his cell phone to snap pictures of video images of the suspect. During cross-examination, Collins provided additional details about the content of the Rusty's video. He testified that the video showed that the suspect came onto the property a little after 9 p.m., and the suspect made entry into the building at 9:40 p.m. The power and cameras were shut down at 10:37 p.m. Collins testified that the clothing worn by the suspect in the video was consistent with the clothing described by codefendant Pratis that the defendant

29

wore during the burglary. Collins also viewed a surveillance video from the city park located across from Rusty's Hardware. Collins recalled that the video showed a truck owned by Pratis and a truck stolen from Rusty's Hardware in the area around the time of the burglary. Collins also testified that a crime scene technician collected a DNA swab from a Gatorade bottle purportedly found inside Rusty's Hardware. The crime scene technician did not photograph or preserve the bottle. Investigators did not obtain copies of the Rusty's video and the park video.

¶ 69    In light of this testimony, I find that the Rusty's video, the park video, and the Gatorade bottle were items that fell within the defendant's initial request for discovery. The Rusty's video and the park video provided objective views of the events that took place at the crime scene near the time of the burglary. The Gatorade bottle purportedly contained the defendant's DNA. The defendant was not provided with any opportunity to inspect these items as it prepared its defense. The State was obligated to ensure that these items, which it had already relied upon to establish probable cause, were placed in the State's possession and control, and thereafter made available to defense counsel pursuant to the written discovery motion filed one day prior to the probable cause hearing. Again, the State's failure to maintain adequate communications with law enforcement to obtain and preserve the surveillance videos and the Gatorade bottle was not inadvertent. These were substantial violations of Rule 412.

¶ 70    The purpose of discovery is to protect the accused from surprise and unfairness and to afford an opportunity to investigate and prepare his case. *People v. Lovejoy*, 235 Ill. 2d 97, 118 (2009); *People v. Leon*, 306 Ill. App. 3d 707, 712-13 (1999). Discovery sanctions are designed to further those goals and to compel compliance rather than punish. *People v. Petty*, 311 Ill. App. 3d 301, 303 (2000). Illinois Supreme Court Rule 415(g) grants the circuit court broad powers to impose sanctions for discovery violations and no showing of bad faith is required for the trial court

30

to act. *People v. Moore*, 2016 IL App (1st) 133814, ¶ 35. Rule 415(g)(i) provides that when a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." Ill. S. Ct. R. 415(g) (eff. Oct. 23, 2020). Once a trial court determines that a discovery violation has occurred, the court has discretion to impose any sanction which deems just. *People v. Koutsakis*, 255 Ill. App. 3d 306, 312 (1993). The appropriate sanction is a decision left to the discretion of the circuit court and the circuit court's decision is entitled to great weight. *Koutsakis*, 255 Ill. App. 3d at 312. While the preferred sanction for a discovery violation is a continuance provided that this would be effective to protect the defendant from surprise or prejudice, a harsh sanction, such as the exclusion of evidence, may be warranted where the defendant is denied a full opportunity to prepare his defense and make tactical decisions with the aid of the information that was withheld. *Leon*, 306 Ill. App. 3d at 713-14. The decision to award a sanction is reviewed for an abuse of discretion. *People v. Kladis*, 2011 IL 110920, ¶ 23.

¶ 71    Following the evidentiary hearing on the defendant's motion for sanctions, the circuit court remarked that the testimony and arguments raised questions regarding not only the investigation but also what was represented to the court and in the pleadings with respect to the unavailability of discoverable materials and information. The court considered sanctions other than dismissal of the charges, noting that "we do favor sanctions of excluding evidence short of dismissal" for violations of the discovery rules. The court spent hours reviewing the case law and found no reported case where "this many" discovery violations occurred. The court stated that it had considered excluding all of the videos and any testimony referencing or related to that evidence. The court concluded that if the videos were excluded, it "could not see how the case could proceed

31

and be proven beyond a reasonable doubt." In my view, the court overstepped and abused its discretion when it engaged in guesswork in projecting whether the State would be able to prove its case if all of the videos and any references thereto were excluded. The court was tasked with fashioning sanctions proportionate to the magnitude of the discovery violations in order to remedy any prejudice to the defense. If the circuit court intended to exclude the lost or untimely produced evidence and any testimony regarding that evidence as the appropriate sanction, the court should have specifically identified each item of evidence and testimony that would be excluded at trial. At that point, it was the province of the State to determine whether it had sufficient evidence to make a *prima facie* case against this defendant, not the concern of the court.

¶ 72     For the reasons stated, I agree that the order of dismissal must be vacated and the cause remand to the circuit court with instructions to reconsider the appropriate sanctions and whether the same, or a lesser sanction would be appropriate to redress the State's numerous discovery violations. I do not join in the majority's discussion of a due process violation and express no opinion on that issue. Accordingly, I specially concur.